Robert J. Sise, J.
The defendant was charged in a one-count indictment with the crime of an attempt to commit the crime of grand larceny in the first degree.
An omnibus motion was filed by the defendant and answering papers were submitted by the People. All the demands *113 and requests have previously been ruled upon by this court, except for one item which is the subject of this opinion. Oral argument was heard on May 22, 1975 and decision was reserved.
The issue raised is whether the defendant is entitled to a Wade-type hearing before trial on a voice identification of him by the complainant.
The facts upon which defendant’s application is to be decided are not in dispute. The defense papers allege and the People concede that the complainant heard the defendant’s voice at the precinct following his arrest. The complaining witness was brought to a room in the station house in which the defendant was present. It was claimed that the defendant had picked up a package dropped off at the demand of an extortionist. A detective asked the complaining witness if he "could recognize that voice,” and he replied, "yes it is the same voice I had heard earlier today on the phone.”
The defendant contends that this procedure was improperly suggestive and, accordingly, all identification testimony by the complainant should be suppressed. The People argue that the matter can be adequately handled at trial by the jury and that no preliminary hearing is warranted or authorized. For the reasons set forth below, this court finds that a pretrial hearing should be held.
Upon consideration, it is apparent that aural and visual identifications are constitutionally indistinguishable.
Both modes of identification concern the utilization of one of the senses in an attempt to recognize a person by sound and sight, respectively. In each instance, a confrontation is arranged and the viewer or listener is equally susceptible to internal and external suggestion and prejudice. The probability that the rights of the subject of the identification will be protected or that it will be possible to determine what transpired at a later date in court do not vary with the means of identification employed.
Each type of identification involves "the compelled display of identifiable physical characteristics” and, consequently, "infringes no interest protected by the privilege against compulsory self-incrimination” (United States v Dionisio, 410 US 1, 5-6). That results because the privilege bars "compelling 'communications’ or 'testimony,”’ not "[making] a suspect or accused the source of 'real or physical evidence’” (Schmerber v California, 384 US 757, 764). Thus, a person can be ordered to *114 exhibit his body (Kirby v Illinois, 406 US 682, 687; United States v Wade, 388 US 218, 221), as well as his voice (United States v Dionisio, supra, p 7; United States v Wade, supra, pp 222-223; Gilbert v California, 388 US 263, 266; Schmerber v California, supra; People v Ellis, 65 Cal 2d 529, 533-534; State v Wright, 274 NC 84, 90), without having his privilege against self incrimination violated.
Voice and visual identifications differ from the taking of fingerprints, handwriting exemplars, voice recordings, blood, clothing and other specimens. While all of these items, as previously noted, fall outside the perimeter of the self incrimination privilege, the use to which they are put contrasts significantly. The latter group of samples is obtained for scientific analysis, not to be shown to a victim or a witness. Prior to trial the defense and its experts have the opportunity to study the evidence and the People’s reports thereon. Therefore, performing these tests conceivably does not hamper cross-examination or trial preparation — a danger in an ex parte identification proceeding. This distinction was controlling in the United States Supreme Court decision in Wade (388 US 218, 227-228 supra; see, also, State v Wright, 274 NC 84, 90-91, cert den 396 US 934).
In this case, the District Attorney has suggested, in oral argument, that the defendant can disguise his voice and, therefore, no hearing is in order. Of course, a defendant can likewise alter his physical appearance by, for example, growing a mustache, getting a tan or coloring his hair. Also, as Chief Justice Traynor observed, "Any attempt by a suspect to disguise his voice is apt to be detected readily by those persons present who can compare the sample with his normal voice” (People v Ellis, 65 Cal 2d 529, 534). In any event, that possibility is irrelevant in considering defendant’s right to a fair trial.
It is further argued by the People that any improper voice comparison is "not of constitutional dimension” and can be resolved by the jury at trial. In view of this court’s reaching the conclusion that there is no difference between voice and visual identifications and the due process considerations discussed below, that contention is rejected. The preliminary examination of evidence by the court, prior to submitting it to the jury is not novel. This rule applies to confessions (CPL §§ 60.45, 710.70; Jackson v Denno, 378 US 368; People v *115 Huntley, 15 NY2d 72), identifications (United States v Wade, supra) and tangible property (Mapp v Ohio, 367 US 643).
Although the New York courts have not dealt with the issue of voice identifications, other jurisdictions have grappled with the problem.
In Palmer v Peyton (359 F2d 199), decided one year before the Wade-Gilbert-Stovall trilogy, a voice "showup” was held in the police station for the alleged victim of a rape. On the preceding evening a voice lineup had been conducted without the defendant participating, because he was not a suspect at that time. The complaining witness was shown the defendant’s shirt which was "’about the same color’ as that worn by her attacker” (Palmer, supra, p 201). During the commission of the crime, the assailant had worn a paper bag over his head which undoubtedly muffled his voice. Although the bag had been recovered, the defendant was not asked to wear it during the voice identification. After the identification no face-to-face confrontation was arranged to see if the complainant thought that the defendant matched her attacker’s physical appearance.
The Fourth Circuit found the voice identification violated due process in Palmer and, in so doing, declared (p 202): "Unquestionably, the most telling piece of evidence in the record was the narration of the events in the station house. Yet at this most critical point in the proceedings against him —the voice identification — Raymond Palmer was deprived of the most elementary safeguards of the law. In their understandable zeal to secure an identification, the police simply destroyed the possibility of an objective, impartial judgment by the prosecutrix as to whether Palmer’s voice was in fact that of the man who had attacked her. Such a procedure fails to meet 'those canons of decency and fairness’ [Malinski v New York, 324 US 401, 416-417, 65 S Ct 781] established as part of the fundamental law of the land. A state may not rely in a criminal prosecution upon * * * an identification secured by a process in which the search for truth is made secondary to the quest for a conviction.”
The United States Supreme Court likewise applied the due process doctrine where an improper identification procedure was alleged. In Stovall v Denno (388 US 293, 295) a hospital showup was staged at which the defendant was required to repeat "a 'few words for voice identification.’ ” The court cited Palmer v Peyton (supra), in support of its holding that it "is a *116 recognized ground of attack upon a conviction independent of any right to counsel” that a defendant’s confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law” (Stovall v Denno, supra, p 302). Thus, it appears that our Nation’s highest tribunal did not intend to restrict its landmark doctrine in Wade-Gilbert-Stovall to visual identifications, but rather, included at least aural identifications as well (see Biggers v Tennessee, 390 US 404, 408 [Justice Douglas, dissenting]).
In North Carolina a voice identification is considered a "critical” stage at which the presence of counsel is required (State v Wright, 274 NC 84, 90, cert den 396 US 934; State of North Carolina v Best, 5 NC App 379). In People v Thomas (44 Mich App 649, 656) a Michigan appellate court applied the Wade rule to the playing of the defendant’s tape-recorded statement to a witness one week before trial and held that such a procedure "was illegal since defendant was not afforded the opportunity to have counsel present.” While this court does not necessarily agree with the counsel requirement established therein (see United States v Ash, 413 US 300), it also finds that "[t]he medium used to make a[n] * * * identification of an accused * * * is not controlling” (People v Thomas, supra, p 655). In fact, "any improperly suggestive viewing at any time may constitute a violation of due process of law” (People v Blake, 35 NY2d 331, 340; see Kirby v Illinois, 406 US 682, 690-691, supra).
In sum, there is no rational basis for not treating visual and voice identifications in the same way under the Wade concept. The only difference between seeing and hearing a suspect is the sense employed in attempting to recognize him.
The next issue to be decided is whether this court has the authority, based upon statutory or case law, to order a voice identification hearing before trial.
It is desirable to avoid having a trial at which evidence of a tainted identification procedure is brought before the jury, thus possibly resulting in a mistrial or a reversal on appeal, should a conviction ensue (but see People v Ganci, 27 NY2d 418, cert den 402 US 924).
CPL 710.20 (subd 5) states that a motion to suppress evidence lies on the ground that it "Consists of potential testimony identifying the defendant as a person who committed the offense charged, which potential testimony would not be *117 admissible upon the prospective trial of such charge owing to an improperly made previous identification of the defendant by the prospective witness.” The language of the statute itself does not confine a motion to suppress identification testimony to a viewing of the defendant or his picture. The voice identification evidence herein would at trial be "testimony identifying the defendant as a person who committed the offense charged” and falls within the statutory classification. The elimination of the word "visual” preceding the word identification — present in Senate and Assembly proposals resulting in the adoption of CPL article 720 (NY Legislative Record and Index 1971, Senate Introductory Record, No. S 4989, p S476 and Assembly Introductory Record, No. A 6264, p A594)— lends support to this theory.
Of course, in order to be entitled to a hearing, a defendant must satisfy the procedural requirements of CPL 710.60. Here, this burden has been met. From the moving and answering papers it is clear that a voice showup took place. A hearing is needed to ascertain what, if anything, was stated to the complainant before the identification and outside the presence of the defendant. In ordering a hearing, this court makes no finding as to the propriety or nature of the procedure employed in the case at hand. Such a determination would be premature at this point and is left to the hearing Judge.
In the absence of a legislative mandate, a hearing would still be appropriate, in the view of this court. Prior to September 1, 1971, no statutory means were available to test the validity of a claim that an improper pretrial identification tainted potential identification testimony. Nevertheless, the courts handled Wade motions: "Admissibility or exclusion determinations with respect to the last classification [identification testimony] seem to have been made by trial courts in haphazard proceedings manufactured upon the valid theory that a court must have inherent authority to conduct some kind of hearing or proceeding for the indicated purpose (see People v McCall, 1966, 17 NY2d 152)”. (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL article 710, pp 263-264.)
Shortly after the Wade holding, Chief Judge Fuld noted, "a pretrial identification procedure, even though not violative of the defendant’s right to counsel or of his' privilege against self incrimination, may be so unfair as to amount to a denial of due process of law” (People v Ballott, 20 NY2d 600, 606). In *118 Ballott the court remanded the case for a new trial and ordered that the complainant’s in-court identification of the defendant would be excluded, unless the People establish, by clear and convincing proof, before trial, "that it is based upon observations of the suspect other than the police station identification” (Ballott, supra, p 607; see People v Ganci, 27 NY2d 418, 427, supra; People v Logan, 25 NY2d 184, 193, cert den 396 US 1020). This court elects to apply the authority and logic of these decisions to the case at bar.
Defendant’s motion for a voice identification hearing is granted.
Order to enter accordingly.