■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARVEY LAWHORN, Appellant. [595 NYS2d 777] —Appeal from a judgment, Supreme Court, Bronx County (John Stackhouse, J., at trial and sentence; Ivan Warner, J., at *Wade* motion), rendered July 15, 1991, convicting defendant, after a jury trial, of robbery in the third degree (Penal Law § 160.05), assault in the second degree (Penal Law § 120.05 [6]), assault in the third degree (Penal Law § 120.00 [1]), and criminal possession of stolen property in the fifth degree (Penal Law § 165.40), and sentencing him to concurrent terms of imprisonment of from 3½ to 7 years, 2 to 4 years, and 2 definite terms of 1 year each, respectively, unanimously held in abeyance, and the matter remanded for a hearing on defendant's motion to suppress identification testimony.

By Indictment No. 3901/90, defendant was charged with the aforenoted crimes, which charges stemmed from an April 23, 1990 elevator robbery. The complainant, who entered her building at some time between 11:30 and 11:55 P.M., greeted another tenant in the lobby prior to entering the elevator with a man she later identified as her assailant. The man grabbed her in a chokehold from behind, threw her against the wall, and took a gold bracelet and rummaged her pocketbook, before fleeing when the elevator door opened on the fifth floor. Complainant immediately took the elevator back to the lobby and reported what happened to the tenant in the lobby. As she did so, defendant emerged from the back of the lobby, and was confronted by complainant's fellow tenant. After a brief struggle, defendant fled with the tenant and another tenant in pursuit.

Police officers who observed the chase and received information from one of the men in pursuit apprehended defendant, handcuffed him and put him into the back seat of the patrol car. The police then transported defendant back to the building, where complainant, who had been told by her fellow tenant that "we caught the guy" and a police officer that someone had been caught, identified defendant as he sat handcuffed in the patrol car.

In moving to suppress the identification testimony at trial,

defendant asserted that the identification procedure was unnecessarily suggestive. The People opposed the motion on the ground that complainant's identification was "spontaneous and not the result of police suggestion or direction", and that there had been no "police identification procedure". At issue on appeal is whether motion court properly denied defendant's motion without a hearing. Upon examination of this record, we conclude that defendant's motion papers were legally sufficient to warrant a hearing on the motion to suppress identification, and that the summary denial thereof was error.

The fact that the police escorted defendant to the complainant and displayed him as he sat handcuffed in the patrol car clearly establishes that this was a police-arranged identification procedure. These circumstances, upon which rested defendant's claim that the identification was impermissibly suggestive, required a *Wade* hearing to fully test the suggestiveness of the procedure *(see,* CPL 710.40 [3]; 710.60 [3], [4]). As recently observed by the Court of Appeals in *People v Rodriguez* (79 NY2d 445, 453), before a court may summarily deny a *Wade* hearing, it must conclude that, as a matter of law, no degree of police suggestiveness could possibly have tainted the identification. On the facts presented, no such conclusion may be reached here. Concur—Milonas, J. P., Ellerin, Ross, Kassal and Rubin, JJ.